UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GERALD L. COLE,                        :
                Plaintiff,             :
                                       :
        v.                             :        C.A. No. 15-310ML
                                       :
STATE OF NORTH CAROLINA,               :
26 DISTRICT, MECKLENBURG               :
COUNTY, TAISIYA DEMINA,                :
GENNADIY DEMINA, and                   :
MARIYA DEMINA,                         :
                Defendants.[1]         :


## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

For the second time in two years, Plaintiff Gerald L. Cole comes to this Court asking that

it "reinstate full and exclusive custody" of his minor child with him and terminate the child

custody decrees ordered by the North Carolina state court in Mecklenburg County.  His first suit,

captioned <u>Cole v. Demina</u>, C.A. No. 13-660ML, was filed on September 26, 2013; because the

relief sought implicated child custody orders, it was dismissed at screening in reliance on

<u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 (1992) (domestic relations exception to federal

jurisdiction divests federal courts of power to issue child custody decrees).  On July 23, 2015, he

returned to this Court with a new *pro se* complaint, together with a motion for leave to proceed

*in forma pauperis* ("IFP").  ECF Nos. 1, 2.  This time he claims that his federal constitutional

rights under the First, Fifth, Ninth and Fourteenth Amendments have been violated by the

conduct of the defendants in connection with this contentious child custody battle.  Nevertheless,

---

[1] The spelling of these defendants' names varies throughout Plaintiff's pleading and the attached court documents.
The Court uses the spelling used most frequently by the North Carolina court based on the sixty-four pages of North
Carolina state court documents attached to Plaintiff's complaint.

at bottom, he asks this Court to exercise personal jurisdiction over the State of North Carolina, its court and several of its residents (the mother and maternal grandparents of the child), to interfere in what appear to be ongoing state proceedings in the North Carolina state courts, to vacate North Carolina's state court order awarding custody to the grandparents and to award sole and exclusive custody to him in Rhode Island, where he now resides.

Plaintiff's IFP motion has been referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A). The request for IFP status renders this case subject to preliminary screening under 28 U.S.C. § 1915(e)(2)(B). Based on my review of his application to proceed without prepayment of fees, I conclude that it should be granted. However, after reviewing liberally Plaintiff's complaint,[2] I find that it fails to state a claim upon which relief may be granted by this Court; the law remains clear that Plaintiff cannot invalidate North Carolina's child custody orders by a suit filed in federal court in Rhode Island. See Mandel v. Town of Orleans, 326 F.3d 267, 272 (1st Cir. 2003). Accordingly, I recommend that the case be dismissed without prejudice. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1); see Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

## I.     BACKGROUND

Plaintiff alleges that, in conspiracy with the child's mother and maternal grandparents, North Carolina violated his constitutional rights by forcing him to return his son to the custody of the grandparents in North Carolina pursuant to a fraudulent and biased court order issued by the Mecklenburg County state court on September 9, 2013. According to his somewhat rambling and incoherent complaint, Plaintiff contends that he had been awarded sole custody in July 2013,

---

[2] Because Plaintiff is *pro se*, a liberal construction of the relevant pleading is appropriate. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

2

following which he removed the child from North Carolina to Rhode Island "to protect his rights as a father and to protect his son." ECF No. 1 at 1. When he refused to comply with the North Carolina court order, Plaintiff was arrested in the fall of 2013 and held for three days, during which the child was turned over to the grandparents. Then, after a constitutionally flawed evidentiary custody hearing in August of 2014, at which the mother, grandparents and Mecklenberg County officials lied, the witnesses were sworn as a group and one of the state social workers was not present during the group swearing-in, custody was awarded to the grandparents. Plaintiff claims he was denied his right to appeal, but alleges that he did file an appeal on January 14, 2015.

Attached to the complaint are copies of what appear to be state court orders, correspondence and other materials related to the case. When the chaotic jumble of documents attached by Plaintiff is reorganized, it tells the story of an acrimonious child custody dispute that required the appointment by the North Carolina state court of two attorneys to act as "child's best interest" attorneys and a volunteer to serve as the "child's custody advocate." ECF No. 1-1 at 40-41. These papers reveal that, after Plaintiff removed the child from North Carolina to Rhode Island in the summer of 2013, the North Carolina court found that the removal of the child was "for the purpose of evading the jurisdiction of North Carolina." ECF No. 1-1 at 9. Based on evidence that Plaintiff advised one of the best-interest attorneys that he intended to defy the directive to return the child, the court ordered that the child immediately be returned to the custody of the grandparents in North Carolina. ECF No. 1-1 at 9. At a hearing held on September 9, 2013, the court relied on the report of the best-interest attorneys that their inspections of the Plaintiff's home caused them to be concerned "about the lack of food" and that they observed a decline in the child's mood after visiting him, by contrast with no concerns

3

about the grandparents' home, which was found to be "child-friendly."  ECF No. 1-1 at 16.  As a

result, custody was changed to the grandparents, with further review to follow.  ECF No. 1-1 at

8-9.

     After entering what appear to be temporary orders regarding custody and visitation, ECF

No. 1-1 at 31-33, 61-62, 64, the North Carolina state court conducted a full evidentiary hearing

in August 2014; this resulted in the custody order of December 10, 2014, which is attached to the

complaint at ECF No. 1-1 at 1-7.  Plaintiff was present and represented by counsel at the

evidentiary hearing.  ECF No. 1-1 at 3.  After reviewing the file and hearing evidence from all

parties, including the best-interest attorneys and Plaintiff, the court found that the child's mother

had substance abuse/alcohol problems, that both the mother and father (Plaintiff) had "failed to

act in a manner consistent as a parent," that the grandparents are fit and proper persons to have

custody, and that the best interest of the child would be served by awarding permanent custody

to the grandparents, with continued visitation and contact with both parents.  ECF No. 1-1 at 4-6.

The court allowed Plaintiff eight weeks of visitation in the summer and at other times, with

permission to take the child to Rhode Island.  ECF No. 1-1 at 5.  A review was set for February

11, 2015.  ECF No. 1-1 at 6.  Before the date set for review, on January 14, 2015, Plaintiff filed a

notice of appeal in the North Carolina state court.  ECF No. 1-1 at 28-30.  He then initiated this

action in federal court on July 23, 2015.

     The complaint does not reveal what, if anything, happened next with respect to the

litigation, nor does it explain how Plaintiff claims that the various provisions of the United States

Constitution listed in his pleading were violated.  It does allege that the child has been with

Plaintiff for the summer of 2015, as the North Carolina state court custody order required.  ECF

No. 1 at 3.

## II.     STANDARD OF REVIEW

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2) is the same as that used when ruling on a Rule 12(b)(6) motion to dismiss.  Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Section 1915 requires dismissal if the Court finds that the case is frivolous, fails to state a claim or seeks damages from a defendant with immunity.  28 U.S.C. § 1915(e)(2)(B). The court has inherent authority to manage its own cases and to review a case to determine whether or not it is frivolous and to ensure that subject matter jurisdiction exists and the plaintiff has standing.  Coates v. Dep't of Econ. Sec. Child Protective Servs., Civil Action No. 12-12301-RGS, 2012 WL 6195814, at *4 (D. Mass. Dec. 11, 2012); see Mallard v. U.S. District Court for the Southern District of Iowa, 490 U.S. 296, 307-08 (1989) (courts have the authority to dismiss frivolous or malicious lawsuits even in absence of any specific statutory provision).  A viable complaint must also satisfy Fed. R. Civ. P. 8(a), which requires a plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction . . . and of the claim showing that the pleader is entitled to relief," as well as Fed. R. Civ. P. 10(a)-(b), which requires that the claims be set out in numbered paragraphs, each limited to a single set of circumstances.

## III.    ANALYSIS

### a.    No Subject Matter Jurisdiction

It is well settled that this Court must refrain from interfering with child custody orders entered in state court cases.  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).  In clarifying the domestic relations exception to federal subject matter jurisdiction, the United States Supreme

Court held that federal courts should not exercise jurisdiction over domestic disputes involving the issuance of a child custody decree or dabble in making rulings regarding the custody of children because state courts have the proficiency and specialized resources to handle such cases. Id. (federal courts are divested of "power to issue divorce, alimony, and child custody decrees"). Decisions from our Circuit are equally clear.  See, e.g., Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.") (internal quotation marks omitted); Dunn v. Cometa, 238 F.3d 38, 41 (1st Cir. 2001) (domestic relations exception is narrow, but it unambiguously applies to prevent federal courts from entertaining claims to obtain, alter or end child custody decree); Nwankwo v. Nwankwo, 993 F.2d 1530, 1992 WL 474105, at *2 (1st Cir. 1992) (federal court lacks subject matter jurisdiction to obtain direct enforcement of one of two conflicting state court custody decrees).  Were this Court to exercise jurisdiction, it would be required to investigate what is in the best interest of Plaintiff's child, as well as Plaintiff's current capabilities as a family provider, all matters that have been carefully considered and appear to be subject to ongoing review by the appropriate state court in North Carolina.  Fundamental principles of federalism dictate that the state courts, here those of North Carolina, are in the best position to make these determinations.  Coates, 2012 WL 6195814, at *6.

In this Circuit, whether the domestic relations exception applies to claims invoking the Court's federal question jurisdiction, rather than only to those invoking diversity jurisdiction, is not yet settled. [3]  Mandel, at 272, 272 n.3 (declining to resolve issue where courts are divided and

---

[3] The issue was recently addressed in a very different context, resulting in a holding in favor of the exercise of subject matter jurisdiction.  Obergefell v. Hodges, 135 S. Ct. 2584, 2598 (2015) (right to marry is protected by Constitution).

debate is esoteric).  Some circuits have held that the domestic relations exception is limited to the diversity jurisdiction statute.  Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943, 947 (9th Cir. 2008).  Plaintiff's complaint appears to straddle diversity and federal question jurisdiction in that Plaintiff has sued citizens of another state, as well as the state itself, but also has invoked various provisions of the United States Constitution, without explaining how they are implicated by his claims.  Nevertheless, in such circumstances, to the extent that the fundamental relief sought is to alter a child custody order entered by a state court, lower courts in this Circuit have invoked Ankenbrandt and applied the exception, holding that subject matter jurisdiction is lacking.  See, e.g., Elias v. Elias, C.A. No. 13-11602-JLT, 2013 WL 3777069, at *8 (D. Mass. July 15, 2013) (domestic relations exception applied to claim purporting to assert claims arising under United States Constitution); Coates, 2012 WL 6195814, at *6 (to the extent that wide ranging federal claim filed in Massachusetts seeks to affect Arizona custody orders, domestic relations exception is a bar).  Although dressed in constitutional clothing, Plaintiff's claim is nothing more and nothing less than a domestic relations contest for custody of a child; it is established law that federal courts lack jurisdiction to entertain such controversies. LaMontagne v. LaMontagne, 394 F. Supp. 1159, 1160 (D. Mass. 1975); see Resendes v. Brown, No. CA 06 286 ML, 2007 WL 293955, at *3-4 (D.R.I. Jan. 25, 2007) (despite complaint grounded in constitution, domestic relations exception compels finding of lack of jurisdiction because, at its core, complaint is based on claim for custody and visitation).

Based on the holding of Ankenbrandt, I find that Plaintiff must pursue his claim that he is entitled to sole and exclusive custody of his son elsewhere; accordingly, I recommend that the complaint should be dismissed.

b. <u>**Abstention**</u>

To the extent that Plaintiff requests that this Court interfere with ongoing state court litigation[4] in North Carolina involving his son, the <u>Younger</u> abstention doctrine requires that this Court abstain from judicial review. <u>Younger v. Harris</u>, 401 U.S. 37, 46 (1971); <u>see</u> <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982) ("The policies underlying <u>Younger</u> are fully applicable to noncriminal judicial proceedings when important state interests are involved."). <u>Younger</u> abstention has been deployed in this Circuit to prevent federal interference in ongoing proceedings regarding domestic issues. <u>In re Justices of the Superior Court Dep't of Mass. Trial Court</u>, 218 F.3d 11, 16 (1st Cir. 2000); <u>Elias</u>, 2013 WL 3777069, at *7; <u>Mojica v. Nogueras-Cartagena</u>, 573 F. Supp. 2d 520, 523 (D.P.R. 2008). Even if a complaint invokes the federal constitution, if the action is essentially a domestic relations case, comity and common sense make abstention appropriate. <u>LaMontagne</u>, 394 F. Supp. at 1160 (although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, action was essentially domestic relations contest; abstention appropriate).

Based on the principles underpinning the <u>Younger</u> abstention doctrine and to the extent that the state court proceeding in North Carolina remains ongoing, I recommend that this Court abstain and that the case should be dismissed.

---

[4] The complaint does not reveal whether the North Carolina proceeding is ongoing. The attached materials suggest that the matter is still pending, in that the state court ordered the parties to return to court for a review in February 2015 and Plaintiff filed a notice of appeal in January 2015. It is impossible to tell what happened next, except that Plaintiff appears to have had custody of his son during the summer of 2015, as the North Carolina court ordered. ECF No. 1 at 3; ECF No. 1-1 at 5-6.

### c.      Rooker-Feldman Doctrine

Alternatively, to the extent that Plaintiff is seeking federal review of a final decision[5] of the North Carolina state court, this Court lacks jurisdiction to conduct such review pursuant to the Rooker-Feldman doctrine.  Elias, 2013 WL 3777069, at *6; Coates, 2012 WL 6195814, at *5.  The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).  It precludes federal action if the relief requested would effectively reverse a state court decision or void its holding or if the claims are "inextricably intertwined" with the state court's decision.  See Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (the doctrine "bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court") (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)); see also Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (Rooker-Feldman doctrine, "in broad terms, deprives the district court of subject matter jurisdiction over a final judgment of a state court").  The Rooker-Feldman doctrine bars a federal court from requiring a state court to undo or revisit its final enforcement order on constitutional or other grounds.  Mandel, 326 F.3d at 272; Elias, 2013 WL 3777069, at *6.  To the extent that the North Carolina proceedings are terminated and the challenged state custody order is final, the Rooker-Feldman doctrine mandates that this action must be dismissed.

### d.      No Due Process Claim

Plaintiff provides no information as to whether he has exhausted his rights of review and appeal in the state courts of North Carolina.  To the extent that the complaint purports to allege a violation of his constitutional due process rights, he has not shown that he has an inadequate

---

[5] The record presented by the complaint does not reveal whether the custody order is final, although it appears more likely that it is not.  See n.4, *supra.*

state remedy to redress his grievances.  When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate post-deprivation remedy, there is no denial of due process.  See Hudson v. Palmer, 468 U.S. 517, 531-37 (1984); Parratt v. Taylor, 451 U.S. 527, 538-44 (1981); O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000).  Here, the complaint fails plausibly to plead the absence of any post-deprivation remedy, but rather suggests that such a remedy is available either through the review hearing scheduled to follow the entry of the custody order or by the appeal that Plaintiff initiated.  Accordingly, Plaintiff's claim that this Court should vacate the custody orders of the North Carolina state court because fraud and conspiracy tainted the proceedings fails as a matter of law and the complaint should be dismissed.  Elias, 2013 WL 3777069, at *4.

### e.    Eleventh Amendment and Absolute Judicial Immunity

The complaint names as a defendant, "State of North Carolina, 26 District, Mecklenburg County;" thus, it purports to sue a state and its geographic subdivision, and possibly the state court that issued the custody orders.[6]  ECF No. 1 at 1.  As the Supreme Court has consistently affirmed, the Eleventh Amendment of the Constitution provides immunity to an unconsenting state like North Carolina from suits brought in federal courts both by her own citizens, as well as by citizens of another state.  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  While the Eleventh Amendment does not prevent the bringing of a suit against a state when the claimant seeks prospective equitable relief enjoining future violations of federal law, Green v. Mansour,

---

[6] While I do not recommend dismissal based on the lack of personal jurisdiction, Plaintiff is cautioned that the requirement that this Court must have personal jurisdiction over a defendant may be fatal to Plaintiff's ability to hale the State of North Carolina into the District of Rhode Island to answer a complaint.  See Antoine v. New Jersey, Civil Action No. 3:09-cv-00380, 2010 WL 4643843, at *3 (W.D.N.C. Nov. 9, 2010) (federal court in North Carolina lacks personal jurisdiction over New Jersey where only asserted contacts with North Carolina were incidental to Plaintiff's extradition to New Jersey); Ray v. Simon, Civil Action No. 4:07-1143-TLW-TER, 2008 WL 5412067, at *16 (D.S.C. Dec. 24, 2008) (South Carolina court lacks personal jurisdiction over New Jersey defendants based on defendants' extradition of plaintiff from South Carolina to New Jersey).  Plaintiff is also cautioned that the individual defendants may not be subject to personal jurisdiction in Rhode Island.

474 U.S. 64, 68 (1985); Ex parte Young, 209 U.S. 123, 159-60 (1908), the relief sought here is

not prospective.  Rather, the custody order complained of has been entered and is now an

historical fact.  Tyler v. Massachusetts, 981 F. Supp. 2d 92, 95-96 (D. Mass. 2013) (citing

Edelman, 415 U.S. at 664).  In Tyler, the court dismissed an action brought pursuant to 42

U.S.C. § 1983 that sought to compel a state court to alter a criminal sentence, which mandated

that the criminal defendant acknowledge paternity and comply with family court orders; finding

the injunctive relief sought to be retroactive in nature, it held that the suit was barred by the

state's sovereign immunity.  Tyler, 981 F. Supp. 2d at 95-96.  Accordingly, even if Plaintiff's

claims against the mother and maternal grandparents are viable, his claims against North

Carolina must be dismissed because its sovereign immunity protects it from Plaintiff's suit.

Acevedo-Concepcion v. Irizarry-Mendez, Civil No. 09-2133 (JAG), 2013 WL 3227880, at *4

(D.P.R. June 25, 2013); see Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (unless a State

has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot

be sued directly in its own name regardless of the relief sought").

        The other immunity barrier to the claims against North Carolina arises if "26 District"

designates not just a geographic district within North Carolina, but rather reflects that Plaintiff

seeks to name the court itself.  To that extent, the claim is barred because civil rights and tort

claims against a court are not cognizable based on the absolute judicial immunity that protects

judges from acts performed within the scope of their jurisdiction.  Elias, 2013 WL 3777069, at

*4-5 (citing Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an

immunity from suit, not just from the ultimate assessment of damage.")).  Although Plaintiff may

believe that the North Carolina state court erred in its rulings, he has not made any reasonable or

credible allegation that its actions or inactions were taken outside the scope of its jurisdiction.

Thus, to the extent that the complaint names the North Carolina state court, it is entitled to absolute judicial immunity and the claim must be dismissed. Elias, 2013 WL 3777069, at *5.

### f.   **Constitutional Claims against Private Actors Insufficient**

Plaintiff's invocation of the United States Constitution necessarily requires reliance on 42 U.S.C. § 1983 as the vehicle for asserting claims arising from a constitutional deprivation against public officials and persons acting under color of state law. Monroe v. Pape, 365 U.S. 167, 173-74 (1961). It does not authorize claims against private parties like the child's mother and maternal grandparents unless they have conspired with or are otherwise willful participants in joint activity with the state or its agents. See Dennis v. Sparks, 449 U.S. 24, 27 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). Plaintiff's complaint includes conclusory allegations of conspiracy; however, "to state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties." Flood v. Me. Dep't of Corr., No. 1:11-cv-270-DBH, 2012 WL 5389533, at *15 (D. Me. Aug. 24, 2012), aff'd, No. 1:11-cv-00270-NT, 2012 WL 5389529 (D. Me. Nov. 2, 2012). Rather, a conspiracy claim must be alleged through specific facts setting forth both "the existence and scope of the alleged conspiracy." Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). In line with this requirement, the First Circuit has stated that "it is appropriate to require that the relationship or nature of cooperation between the state and a private individual be pled with some detail." Claudio-Concepcion v. Banco Bilbao Vizcaya Argentaria P.R., Civil No. 12-1578 (SEC), 2013 WL 3316542, at *6 (D.P.R. July 1, 2013).

Plaintiff's pleading falls woefully short of hitting this mark; it alleges only that the Mecklenburg County "DSS did conspire with grandparent and mother to defraud Father." ECF No. 1 at 1. It includes nothing to explicate the relationship or nature of the cooperation

constituting the alleged conspiracy.  Accordingly, I recommend that the constitutional claims against the private parties (the child's mother and maternal grandparents) should be dismissed for failure to state a plausible claim that they conspired with state officials.

### g.  Failure to Comply with Fed. R. Civ. P. Rules 8 and 10

A viable complaint must satisfy Fed. R. Civ. P. 8(a), which requires a plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction . . . [and] of the claim showing that the pleader is entitled to relief," as well as Fed. R. Civ. P. 10(a)-(b), which requires a caption, a title, and claims set out in numbered paragraphs, each limited to a single set of circumstances.  Plaintiff's pleading is written in narrative form, is difficult to comprehend, and, apart from his clear asseveration that he should get exclusive custody of his son, consists largely of legal conclusions, without any factual underpinnings.  It also lacks a title and numbered paragraphs as required by Fed. R. Civ. P. 10.  In light of these defects, the case is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Elias, 2013 WL 3777069, at *3-4.

## IV.  CONCLUSION

Based on the foregoing, I recommend that Plaintiff's complaint be DISMISSED without prejudice.  28 U.S.C. § 1915(e)(2).  Further, because the essential and only relief that Plaintiff seeks is the vacation of North Carolina's custody decree and the entry of a custody order vesting sole and exclusive custody of his son with him, I do not recommend that he be given leave to amend.  Brown v. Rhode Island, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) (leave to amend not necessary if it is "crystal clear that . . . amending the complaint would be futile"); Uzamere v. United States, No. 13-505 S, 2013 WL 5781216, at *19 (D.R.I. Oct. 25, 2013), aff'd, No. 13-2454 (1st Cir. Apr. 11, 2014) (if identified defects requiring dismissal are of serious caliber, court may skip leave to amend as fruitless).

13

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 3, 2015